UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HUNTINGTON OPERATING CORP; dba TEXAS INTERNATIONAL IMPORT EXPORT,<br><br>    Plaintiff,<br>VS.<br><br>SYBONNEY EXPRESS, INC; dba J. P. TRANSPORTS, INC., *et al*,<br><br>    Defendants. | CIVIL ACTION NO. H-08-781 |

## **OPINION & ORDER**

Pending before the Court are Transport Direct Corp. d/b/a Custom Direct Logistics ("Custom")'s Motion for Summary Judgment (Doc. 21); and the response and reply thereto. For the reasons explained below, the Court GRANTS-IN-PART and DENIES-IN-PART Custom's Motion.

    I.    **Background & Relevant Facts.**

This case concerns the theft of a shipment of perfume in transit from Florida to Texas. Plaintiff Huntington Operating Corp. ("Huntington") employed Custom, a transportation broker, to arrange the shipment. Doc. 21 at 1. Custom in turn employed Sybonney Express, Inc. d/b/a Sybonney Express ("Sybonney Express"), a motor carrier, to pick up the cargo in Miami, Florida, and deliver it to Huntington in Houston, Texas. *Id*. On or about April 29, 2006, the shipment was stolen, along with the tractor-trailer, from a truck stop in Pasco County, Florida. *Id*.

Huntington brought suit against Custom because, according to Huntington, Custom was responsible for ensuring that Sybonney Express had adequate insurance to cover the

cargo. The tractor-trailer in question was allegedly not covered by the insurance policy, however, due to a clerical error. Huntington alleges (1) violations of the Texas Deceptive Trade Practices Act, (2) negligent misrepresentation, (3) common law fraud, (4) negligence, (5) negligent entrustment, (6) breach of fiduciary duty, and (7) breach of agreement.

According to Huntington, Custom failed to ensure insurance coverage for reasons that were discoverable prior to selecting Sybonney Express. Doc. 26 at ¶7. Furthermore, Huntington contends that Custom failed to disclose information regarding Sybonney Express licensure history that would have been "critical" in Huntington's decision to accept Custom's choice of Sybonney Express. *Id*. Additionally, Huntington asserts that Custom assured Huntington that it was not necessary to procure additional insurance and that the insurance coverage maintained by Sybonney Express was "more than sufficient" to cover the perfume shipment in the event of a loss. *Id*.

According to Custom, it followed standard operating procedures in ensuring that Sybonney Express had adequate insurance for the shipment. Doc. 21 Exh. B at ¶5. In his sworn affidavit, Joseph Lepro, the Operations Manager for Custom, stated that Custom received from Sybonney Express a Certificate of Liability Insurance. *Id*.; *see also* Doc. 21 Exh. B-3. Custom further confirmed the existence of the insurance policy on the Federal Motor Carrier Safety Administration ("FMCSA") website at http://li-public.fmcsa.gov. *Id*.; *see also* Doc. 21 Exh. B-2 at 1. Lastly, Custom verbally confirmed the existence of cargo coverage as stated in the Certificate of Liability Insurance by contacting via phone Mack Schumate ("Schumate"), the agent for KBS Insurance and Sybonney Express' insurance agent. *Id*.

When Huntington came to make a claim for the stolen shipment from the

insurance carrier, however, it was denied. Doc. 1 at 4. The insurance carrier gave as a reason for denying the claim that the vehicle that transported the perfume shipment was "not scheduled specifically in the cargo insurance policy." *Id.*

## II.        Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co*., 136

F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, although it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

**III.      Analysis.**

      **a.      Deceptive Trade Practices Act Claim.**

Plaintiff Huntington alleges Custom violated the Deceptive Trade Practices Act ("DTPA"). Specifically, by representing that the carrier Sybonney Express was "properly and adequately insured" and "reliable, responsible, and [] did not have blemishes on its record," *See Plaintiff's Complaint* Doc. 1 at 5-6. Custom is alleged by Huntington to have violated DTPA §17.46(b)(5) (representing that goods or services have benefits they do not have); DTPA § 17.46(b)(7) (representing that goods or services are of a particular standard if they are of

another); and DTPA § 17.46(b)(12) (representing that an agreement confers or involves rights, remedies or obligations which it does not have).[1]

Custom sole ground for seeking summary judgment is that, under the DTPA, defendant's actions must be the "producing cause" of plaintiff's damages, and that they were not so in this case. Producing cause requires that the acts be both a cause-in-fact and a "substantial factor" in causing the injuries. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995); *Prudential Ins. Co. v. Jefferson Assocs. Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995). A producing cause is an efficient, exciting, or contributing cause, which in the natural sequence of events, produces injuries or damages. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995). The thrust of Custom's reasoning is that the only cause of Huntington's damages was the theft of the cargo by an unknown third party. Producing cause, however, is not primary cause. Causation may be established in DTPA claims where insurance coverage is misrepresented and damages ensue from the lack of coverage, despite the causal necessity of extrinsic happenings to precipitate the making of an insurance claim. In cases where plaintiffs recover on their insurance code and DTPA causes of action, defendants make misrepresentations, the plaintiffs accept the insurance coverage, and then discover to their peril that the insurance coverage was not as promised. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d

---

[1] The Court notes in passing that the Carmack Amendment, which precludes all other causes of action for carrier liability, does not extend to transportation brokers. Many courts have held that the Carmack Amendment does not apply to claims brought against brokers. *See Oliver Prods. Co. v. Foreway Mgmt. Servs., Inc.*, No. 1:06-CV-26, 2006 U.S. Dist. LEXIS 32968, 2006 WL 2711515, *1 (W.D. Mich. May 24, 2006) ("While federal courts, including the Supreme Court, have applied preemption to carrier cases because the Carmack Amendment intended uniform liability in such cases, they have not applied this doctrine to transportation brokers."); *Delta Research Corp. v. EMS, Inc.*, No. 04-60046, 2005 U.S. Dist. LEXIS 18353, 2005 WL 2090890, *5 (E.D. Mich. Aug. 29, 2005); *Chubb Group of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1068-69 (C.D. Cal. 2002) ("[T]he Carmack Amendment does not apply to brokers."); *Transcorr Nat'l Logistics, LLC v. Chaler Corp.*, 2008 U.S. Dist. LEXIS 104472, 5-6 (S.D. Ind. Dec. 19, 2008) (Same).

688 (Tex. 1979); *State Farm Fire & Cas. Co. v. Gro*s, 818 S.W.2d 908 (Tex. App.--Austin 1991, no writ).

The main point of differentiation with the above cited cases is that here Custom is not an insurance carrier but rather an intermediary. Yet Custom's acts were just as surely a "substantial factor" because they acted on behalf of Huntington in selecting a carrier. As their own recitation of facts compellingly reveals, the transportation broker bore the responsibility of ensuring that the carrier had insurance to cover the shipper's cargo. Custom cannot escape liability by claiming it relied on Sybonney Express' alleged misrepresentations regarding coverage. It must look instead to its own cause of action against Sybonney Express for indemnification. Finding that the causation is no bar to recovery under the DTPA, the Court denies summary judgment to Custom as to the DTPA claim.

### b. Negligence and Negligent Misrepresentation

Huntington alleges that Custom breached its duty to Huntington when it "failed to confirm that the carrier selected by [Custom] was properly and adequately insured." See Doc. 1 at 9-10. Furthermore, Custom breached its duty when it "entrusted the perfume to the carrier when it possessed the knowledge that the carrier has had numerous licensing problems in the past."[2] *Id*. A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). There is scarce authority on what duty is owed by a broker to a shipper. *See Chubb Group of Ins. Cos. v. H.A. Transp. Sys.*, 243 F. Supp. 2d 1064, 1071 (C.D. Cal. 2002). Custom argues, that it has no duty for the damage to the cargo while in transit, *See* Defendant's Motion, Doc. 21 at

---

[2] There is clearly no causal relationship between the licensing problems and the theft of the cargo. Nor does Plaintiff do anything to support a causal relationship. Any issues pertaining to licensing problems are disregarded by the Court as being wholly unrelated to Plaintiff's damages.

15-16, but the case it cites for this proposition, *H.A.*, contemplates that a shipper may rely on a broker to ensure insurance coverage for the shipment and hold him liable for failure to do so if lack of coverage results in loss to the shipper. *H.A. Transp. Sys.*, 243 F. Supp. 2d at 1072. Custom represented to Huntington that as part of the ongoing business relationship between them, Custom would assume the duty to ensure insurance coverage up to $250,000 because Huntington had high-value shipments. *See* Doc. 26 Exh. A at 23-24. Custom also represented to Huntington and assumed the duty to Huntington to provide a reliable carrier. *See* Doc. 26 Exh. A at 80. Although as a broker Custom did not have custody or control of this shipment at any time, Custom bears a duty to prevent loss by ensuring that the carrier had insurance and was a reliable carrier.

The duty Custom owed Huntington was to act as a reasonable prudent person would act under the same or similar circumstances regarding any reasonably foreseeable risk. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex. 1984). Custom took many measures to ensure that adequate insurance covered the shipment before transit, including obtaining a Certificate of Liability Insurance from Sybonney Express, checking the FMCSA website and contacting KBS Insurance directly. This makes it a close question whether Custom exercised such reasonable care that it could not have acted negligently despite the fact that coverage was ultimately found not to exist. The stated reason accepted by both parties for denial of the claim is that the specific tractor-trailer and its cargo were not listed on the policy. It appears to the Court that genuine issues of material fact remain as to whether Custom should have checked that the specific cargo was listed on the policy. Such a fact question is better reserved for the jury and summary judgment should not be granted for Custom on breach of duty.

The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs*, 907 S.W.2d 472, 477 (Tex. 1995). From the foregoing discussion it becomes clear that the loss was not too attenuated a result from the lack of insurance coverage and that this was foreseeable. Having failed to demonstrate that any essential element of the claim of negligence is lacking, the Court denies summary judgment to Custom.

The elements of a claim for negligent misrepresentation are:

1) a representation made by the defendant in the course of the defendant's business, or in a transaction in which the defendant has a pecuniary interest;

2) the defendant supplied false information for the guidance of others in their business;

3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

4) the plaintiff suffered pecuniary loss by justifiably relying upon the representation.

*Tull v. Chubb Group of Ins. Cos.*, 146 S.W.3d 689, 697 (Tex. App. Amarillo 2004). As the plaintiff was harmed not only by defendant's failure to exercise due care in selecting the carrier but also in relying on defendant's communications concerning the selection of the carrier, this cause of action is closely allied with that of the negligence claim. The only novel arguments Custom raises specific to the negligent misrepresentation claim are that 1) the representations were non-actionable as promises of future conduct; and 2) that Custom was unaware they were false. These will be addressed in turn.

"[T]he sort of "false information" contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App. Houston 14th Dist. 1999). As can be seen from *Allied Vista*, a promise to employ someone subsequently reneged upon is therefore non-actionable

because it related to future conduct. *Id*. Such is not the case here where Custom engaged Huntington in an ongoing business relationship where the implied representation at every subsequent transaction was that the carrier would have insurance and be reliable. Thus, although Custom did not represent to Huntington that Sybonney Express had insurance and was reliable, when Custom agreed to arrange for the shipment of the perfume it in effect made that representation with regards to the carrier it selected. Although at the time Custom agreed to ensure insurance coverage this was a promise as to future conduct, the actionable representation at issue inheres in the transaction that actually did occur between Huntington and Custom at the time Custom acted as broker and arranged for Sybonney Express to carry the perfume.

As discussed above fact issues remain as to whether Custom was negligent in arranging for a carrier that was not insured for the perfume shipment. There is no dispute, however, that Custom's error was innocent. Custom did not intentionally deceive Huntington into agreeing to have its cargo shipped by an uninsured carrier. This, however, is obviously no defense to a negligent misrepresentation claim as the information need only be negligently conveyed. *See, e.g.*, *Milestone Properties v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex. App. 1993). Having found no valid argument against Huntington's negligent misrepresentation claim, the Court denies Custom's summary judgment motion as to it.

      c.    **Common Law Fraud.**

The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re*

*FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). The Court grants Custom summary judgment because it finds that Custom did not know the representation was false nor made the representation recklessly without any knowledge of the truth and as a positive assertion.

Custom in good faith believed that Sybonney Express had insurance. Furthermore, Custom took sufficient measures to ensure Sybonney Express had insurance that it cannot be said it acted recklessly with regards to the truth of the matter. Thus, Huntington cannot make out a claim of common law fraud against Custom.

### d. Negligent Entrustment.

Under Texas law, the elements for a negligent entrustment claim are: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) the owner knew, or should have known, the driver was unlicensed, incompetent or reckless; (4) the driver was negligent on the occasion in question; and (5) such negligence proximately caused injury. *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987). No evidence has been presented on what role, if any, the driver of the perfume shipment played in causing injury to Huntington. The case concerns the theft of the shipment by an unknown third party while the driver was at a rest stop. Huntington has failed to establish how the driver's negligence contributed to the theft. Summary judgment is appropriate for Custom on this claim.

### e. Breach of Fiduciary Duty

Fiduciary duty is an extraordinary duty which will not be lightly created. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.--Dallas 1989, no writ). Fiduciary relationships arise from formal, technical relationships such as attorney/client, or from informal, social, moral, or personal relationships of confidence and trust which impose greater duties as a matter of law. *Lovell v. Western National Life Insurance Co.*, 754 S.W.2d 298, 303 (Tex.App.--

Amarillo 1988, writ denied). The record in this case shows that the transaction at issue was nothing more than an arms-length contract between businesses. Huntington's representative, Larry Aptekar's allegations that he had come to rely and place trust on Custom, *See* Doc. 26 Exh. A at 19, 20, and 25, are insufficient as a matter of law to establish a relationship of trust and confidence rising to the level of fiduciary obligation. The fact that one business person trusts another and relies on a promise to perform a contract does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty. *Garrison Contrs. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 301 (Tex. App. 1996). Subjective trust alone is not enough to transform an arms-length dealing into a fiduciary relationship. *Crim Truck & Tractor Company v. Navistar International Transportation Corporation*, 823 S.W.2d 591, 595 (Tex. 1992). If the issue is one of no evidence, whether the fiduciary relationship exists is a question of law. *Crim Truck*, 823 S.W.2d at 594. In this case, there was no evidence sufficient to establish a fiduciary relationship, the Court grants summary judgment to Custom.

        **d.**     **Breach of Contract.**

Huntington alleges that "Plaintiff and Defendant [Custom] had agreement by the terms of which [Custom] would provide services to Plaintiff to hire an insured, reputable, quality carrier for the transportation of a high value shipment of perfume from Miami, Florida to Houston, Texas." Furthermore, "Defendant [Custom] breached the agreement when it hired a carrier that was not insured . . . ." The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l, Ltd. Liab. Co.*, 51 S.W.3d 345, 351 (Tex. App. Houston 1st Dist. 2001). When the evidence is undisputed regarding a person's

conduct under a contract, the court as a matter of law determines whether the conduct shows performance or breach of a contract obligation. *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex. App.--Austin 1998, pet. denied).

Custom raises two arguments in favor of striking the cause of action for breach of contract. First, that it exercised such "reasonable care" in selecting a carrier that it was not in breach. Second, that the lack of insurance was not a "substantial factor" in causing Plaintiff's damages. Finding no merit to either of these arguments, the Court sustains the action.

Custom seeks to argue that it did not breach the contract, which both parties assume to exist, because it was not aware of any fault and exercised reasonable care. Contract law, however, does not measure the 'fault' of either party but looks only to whether performance that was due was given. Assuming, as both parties do here, that providing an *insured* carrier was a contractual obligation that Custom bore to Huntington, then Custom may well have breached that obligation when it turned out that the carrier did not have adequate insurance.

Custom also seeks to repeat the same argument relating to causation: *i.e.* that because an unknown third party stole the shipment, Custom cannot be held liable. As discussed above this argument fails because the loss was preventable as far as Huntington is concerned by the provision of insurance.

**IV.     Conclusion.**

Accordingly, it is hereby ORDERED that Custom's Motion for Summary Judgment is DENIED as to the DTPA claim; DENIED as to the Negligence claim; DENIED as to the Negligent Misrepresentation claim; GRANTED as to Common Law Fraud; GRANTED as to Negligent Entrustment; and DENIED as to Breach of Contract.

SIGNED at Houston, Texas, this 3rd day of August, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE